**FEDERAL ELECTION COMMISSION,**
Plaintiff–Counter–Defendant/
Appellee/Cross–Appellant,

v.

**COLORADO REPUBLICAN FEDERAL CAMPAIGN COMMITTEE,** Douglas Jones, Defendants–Counter–Claimants/ Appellants/Cross–Appellees.

Nos. 93–1433, 93–1434.

United States Court of Appeals,
Tenth Circuit.

Sept. 20, 1996.

Jan Witold Baran, Thomas W. Kirby, Carol A. Laham and Scott S. Harris of Wiley, Rein & Fielding, Washington, D.C., for Colorado Republican Federal Campaign Committee and Douglas L. Jones, as Treasurer.

Lawrence M. Noble, General Counsel, Richard B. Bader, Associate General Counsel, and Vivien Clair, Attorney, Federal Election Commission, Washington, D.C., for Federal Election Commission.

Before HENRY and LOGAN, Circuit Judges, and REED,* Senior District Judge.

**OPINION ON REMAND**

LOGAN, Circuit Judge.

This matter is before us on remand from the United States Supreme Court. Our court's original opinion appears as *Federal Election Commission v. Colorado Republican Federal Campaign Committee,* 59 F.3d 1015 (10th Cir.1995). We determined that certain Colorado Republican Federal Campaign Committee (Colorado Party) prenomination advertising criticizing an announced senatorial candidate for the Democratic nomination was a "coordinated expenditure" made "in connection with the general election campaign" pursuant to 2 U.S.C. § 441a(d)(1) and (3). We thus concluded that the Colora-

---

* The Honorable Edward C. Reed, Jr., Senior United States District Judge, United States District Court for the District of Nevada, sitting by designation.

do Party's expenditure violated § 441a(d)(3). We further upheld against a First Amendment challenge, the monetary caps in § 441a(d)(3).

The Supreme Court, in a plurality opinion, vacated our judgment and remanded. *Colorado Republican Fed. Campaign Comm. v. Federal Election Comm'n,* —— U.S. ——, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996). That decision concluded that the expenditure at issue was independent and not coordinated and that the Party Expenditure Provision at § 441a(d) was unconstitutional as applied to a political party's independent expenditures. The Supreme Court's decision recognized that it did not completely dispose of the issue the Colorado Party raised in its counterclaim—a facial challenge to the Party Expenditure Provision as it applies to coordinated expenditures.

In discussion, the plurality opinion stated that the counterclaim "did not focus specifically upon coordinated expenditures. Nor did its summary judgment affidavits specifically allege that the Party intended to make coordinated expenditures exceeding the statute's limits." —— U.S. at —— —— ——, 116 S.Ct. at 2319–20 (citation omitted). The opinion relied on this lack of focus as a prudential reason not to decide the broader question—the constitutionality of the statute's coordinated spending limits—as "it may not be necessary to resolve the entire current dispute." *Id.* at ——, 116 S.Ct. at 2320. The opinion left to briefing and decision on remand the addressing of that issue including examining "in that context, relevant similarities or differences with similar expenditures made by individuals or other political groups," an issue it labeled as "complex." *Id.*

The plurality opinion also stated that the Colorado Party did not challenge a provision of the statute "that imposes a $5,000 limit on any contribution by a 'multicandidate political committee' (including a coordinated expenditure) and which would apply to party coordinated expenditures if the entire Party Expenditure Provision were struck from the statute as unconstitutional." *Id.* "Rather, ... the Party has made an obscure severability argument that would leave party coordi-

nated expenditures exempt from that provision." *Id.* It noted that on remand the lower courts would have to consider "whether or not Congress would have wanted the Party Expenditure Provision limitations to stand were they to apply only to coordinated, and not to independent, expenditures," an issue that "should be briefed and considered before addressing the constitutionality of such regulation." *Id.* at —— —— ——, 116 S.Ct at 2320–21.

Arguing that it does want to make expenditures coordinated with its candidates, the Colorado Party contends that no evidentiary issues are involved requiring remand to the district court. It urges us to require expedited briefing and argument and to make a quick decision on the party's facial constitutional challenge to the Party Expenditure Provision as applied to coordinated expenditures.

The Colorado Party asserts there are three issues remaining to be resolved on remand:

(1) "whether or not Congress would have wanted the Party Expenditure Provisions limitations to stand were they to apply only to coordinated, and not to independent, expenditures." *See* —— U.S. at —— —— ——, 116 S.Ct. at 2320–21;

(2) the relationship between the Party Expenditure Provisions of § 441a(d)(3) and the $5,000 limit upon contributions by a "multicandidate political committee" of § 441a(a)(2). *See id.* at ——, 116 S.Ct. at 2320; and

(3) whether it is constitutional to limit party expenditures in fact undertaken in coordination with candidates. *See id.*

Opposition to the FEC's Motion for Remand at 6. It argues that none of the three require any additional factual record.

In contrast the Federal Election Commission (FEC) argues for a remand to the district court stating that complex factual questions exist that require development in the record:

For example, in what ways, if any, do coordinated expenditures by political parties differ from coordinated expenditures

by individuals or nonparty political groups? In what ways are they similar? Are some party coordinated expenditures more like independent expenditures than like contributions? Are others more like contributions? *See Colorado Republican,* —— U.S. at ——, 116 S.Ct. at 2320. How are party committees similar to, or different from, nonparty political committees in constitutionally significant respects? Do the interests of candidates who run under a particular party's label necessarily coincide with the interests of the party committees (or of the members of those committees) that make coordinated expenditures under 2 U.S.C. § 441a(d)(3) and, if not, do coordinated expenditures create the opportunity for a quid pro quo? Do candidates participate in soliciting funds for party committees, and if so, does coordinated spending by party committees increase the opportunities for private contributors to the party to obtain a quid pro quo from a candidate? Are there any other ways in which coordinated party expenditures embrace the possibility that the party's contributors may obtain a quid pro quo from candidates? . . .

Can contributors to a candidate's political party gain access to or influence with the candidate as officeholder that they otherwise would not have? Do large contributors give contributions to political parties to support a particular political point of view or to curry favor with officeholders affiliated with the party? Do party officials ever assist large contributors to the party in their efforts to influence officeholders affiliated with the party? Factual responses to such questions are plainly relevant to determining whether coordinated expenditures by political parties provide an opportunity for corruption or the appearance of corruption.

Federal Election Commission's Response to Motion for Expedited Consideration at 9–10.

Although the Colorado Party may have properly stated the issues to be decided, we agree with the FEC that some factual evidence may be relevant to the proper resolution of at least the second and third of those issues. Even if that is not so, the issues are too important to be resolved in haste. It seems inevitable that not only this court but the Supreme Court itself will have to address these issues. We will both benefit by the parties fleshing out the record with any evidence they and the district court deem relevant to the issues' resolution and by the district court's resolution of the legal issues in the first instance.

For these reasons we deny the Colorado Party's motion to expedite and grant the FEC's motion to remand to the United States District Court for the District of Colorado for further proceedings in accordance with the opinion of the United States Supreme Court.

IT IS SO ORDERED.